Docket No. 98070–Agenda 6–March 2005.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee v. RUDY PHILLIPS, Appellant.

Opinion filed June 3, 2005.

JUSTICE GARMAN delivered the opinion of the court:

Defendant, Rudy Phillips, was arrested after a technician found child pornography on defendant’s computer and informed the police. Defendant made incriminating statements and consented to a search of his home, which found more apparent child pornography. He was charged by indictment with one count of possessing, with intent to disseminate, a picture of a child engaged in sexual intercourse (720 ILCS 5/11–20.1(a)(1)(i), (a)(2) (West 2000)), and two counts of possessing, with intent to disseminate, a picture of a child engaged in oral sex (720 ILCS 5/11–20.1(a)(1)(ii), (a)(2) (West 2000)). Defendant filed a motion to quash arrest and suppress evidence, which was denied. After a bench trial in the circuit court of Kankakee County, he was convicted of all three counts. Defendant appealed, claiming the child pornography statute is unconstitutionally overbroad, that the indictment was defective, that the circuit court erred in denying his motion to quash arrest and suppress evidence, and that he was not proved guilty beyond a reasonable doubt. The appellate court affirmed, with one justice dissenting. 346 Ill. App. 3d 487. Defendant sought and obtained leave to appeal to this court. See 177 Ill. 2d R. 315. He has abandoned his constitutional attack on the statute, but renews his other claims.

BACKGROUND

On October 11, 2001, defendant took his computer to Fifth Avenue Video in Kankakee to have it repaired. Defendant had originally purchased the computer from John Paris, the proprietor of Fifth Avenue Video. On the morning of October 12, after repairing the computer, Paris tested it by playing an MPG file he accessed through the My Documents menu on the Windows 98 desktop. The file proved to be a short video depicting what appeared to be a young girl performing oral sex on a man, with a woman looking on. Paris immediately called Detective Buhrmester of the Bradley police department, because he was an acquaintance. He told Buhrmester what he had seen, and asked him to come and look at it.

When Buhrmester arrived, Paris played the video for him. Buhrmester agreed it was child pornography and informed other officers. At about 10 a.m. Detectives Coy and Morris arrived, and Paris played the video for them. There is conflicting testimony regarding whether Coy and Morris proceeded to examine other files on defendant’s computer while they were at Fifth Avenue Video. The officers decided to place Fifth Avenue Video under surveillance, and asked Paris to contact them by cell phone when defendant returned to pick up his computer. Paris did so. The officers stopped defendant outside the store and, after he identified himself and told them the computer was his, they arrested him and seized his computer.

At the police station defendant received 
Miranda 
warnings and agreed to speak with the officers. Morris testified defendant said he did not produce child pornography, but was just a collector who exchanged child pornography over the Internet, and that he would post child pornography on Web sites in order to become a member. Defendant also admitted there was child pornography at his home. He consented in writing to a search of his home.

At defendant’s home, he handed the officers two pictures that appeared to have been downloaded and printed from the Internet. Each picture was sexually explicit and appeared to depict a preteen girl. Defendant next showed the officers a box of 3- by 5-inch computer disks and told them the disks contained child pornography. The officers loaded several of the disks into a laptop computer brought for that purpose, and viewed numerous pictures of what appeared to be children engaged in vaginal, anal, and oral sex. The officers seized the two printed pictures, over 100 disks, and various pieces of computer equipment. Defendant was later indicted.

Defendant filed a motion to quash arrest and suppress evidence, in which he argued the warrantless search of his computer was illegal because Paris lacked authority to consent to a search of his computer. After a hearing in which Paris and Morris testified to the facts recounted above, the court denied the motion. The court found Paris’ initial search of the file on defendant’s computer was the act of a private citizen, not an agent of law enforcement. The court further found that the police viewed the same video Paris viewed, and by doing so they acquired probable cause to arrest defendant. The court found the officers had probably not viewed any items on defendant’s computer other than the video Paris viewed.

Defendant then filed a motion to reconsider the denial of his motion to suppress. The court issued a written ruling in which it again held the police could legally arrest defendant after viewing the video Paris viewed. However, the court reversed its finding that the police had not viewed any other files. The court accordingly barred the State from using at trial any file obtained from defendant’s computer other than the one Paris had discovered.

At trial, Paris and Morris again testified to the facts recounted above. The State introduced the two printed pictures defendant turned over to police, as well as a number of pictures printed from the disks seized from defendant’s home. Finally the court admitted the disks, and viewed a small sample of the pictures that were stored on the disks but had not been printed. Each of the pictures from the disks appeared to depict a child engaged in a sex act, including sexual intercourse and performing or receiving oral sex.

The court made a number of express findings before announcing its verdict. First, the court found the police did not “exceed the scope of the initial search by the private citizen.” The court then found the pictures admitted at trial depicted real children under the age of 18. Regarding the element of intent to disseminate the pictures, the court noted there were duplicate pictures in evidence, which by statute creates a rebuttable presumption of intent. However, the court then stated that, “[w]ithout considering the two instances of duplicate [
sic
],” it found Morris’ testimony that defendant admitted he exchanged child pornography over the Internet to be “very credible.” The court then found the State had proven possession of child pornography with intent to disseminate as to all three counts. The court later sentenced defendant to concurrent terms of 4½ years and a $1,000 fine for each count. Defendant appealed.

ANALYSIS

I. The Indictment

Defendant argues for the first time on appeal that the indictment was defective for failure to adequately inform him of the charges. He also argues his trial counsel was ineffective for failing to attack the indictment or request a bill of particulars.

“Where a defendant challenges the sufficiency of an indictment or information for the first time on appeal, a reviewing court need only determine whether the charging instrument apprised the defendant of the precise offense charged with enough specificity to prepare his or her defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. [Citations.] In making this determination, the reviewing court may resort to the record. [Citation.]” 
People v. Maggette
, 195 Ill. 2d 336, 347-48 (2001).

Thus, the question is whether, in light of the facts of record, the indictment was so imprecise as to prejudice defendant’s ability to prepare a defense. See 
People v. Thingvold
, 145 Ill. 2d 441, 448 (1991).

The indictment charged defendant as follows:

“Count I *** That on or about the 11th day of October, 2001, in the County of Kankakee and State of Illinois, [the defendant] committed the offense of CHILD PORNOGRAPHY, in that said defendant, with the knowledge of the nature or content thereof, possessed, with intent to disseminate, a photograph or other similar visual reproduction or depiction by computer, of a child whom he knew or reasonably should have known to be under the age of 18, actually or by simulation engaged in an act of sexual intercourse with another person, in violation of Chapter 720, Paragraph 5/11–20.1(a)(2)(i) of the Illinois Compiled Statutes.

Count II *** That on or about the 11th day of October, 2001, in the County of Kankakee and State of Illinois, [the defendant] committed the offense of CHILD PORNOGRAPHY, in that said defendant, with the knowledge of the nature or content thereof, possessed, with intent to disseminate, a photograph or other similar visual reproduction or depiction by computer, of a child whom he knew or reasonably should have known to be under the age of 18, actually or by simulation engaged in an act of sexual contact involving the mouth of the child and the sex organs of another person, in violation of Chapter 720, Paragraph 5/11–20.1(a)(2)(ii) of the Illinois Compiled Statutes.

Count III *** That on or about the 11th day of October, 2001, in the County of Kankakee and State of Illinois, [the defendant] committed the offense of CHILD PORNOGRAPHY, in that said defendant, with the knowledge of the nature or content thereof, possessed, with intent to disseminate, a photograph or other similar visual reproduction or depiction by computer, of a child whom he knew or reasonably should have known to be under the age of 18, actually or by simulation engaged in an act of sexual contact involving the sex organ of the child and the mouth of another person, in violation of Chapter 720, Paragraph 5/11–20.1(a)(2)(ii) of the Illinois Compiled Statutes.”

Defendant claims the indictment was imprecise in two ways. First, each of the three counts charged him in the disjunctive by charging that he possessed “a photograph or other similar visual reproduction or depiction by computer.” Second, each count failed to specify which of the numerous pictures seized from his home would be offered at trial.

Defendant relies on 
People v. Eagle Books, Inc.
, 151 Ill. 2d 235 (1992), to support his first argument. In 
Eagle Books
, each of the 144 counts of the indictment alleged the defendant “provided, offered for sale, or otherwise made available” an obscene magazine. 
Eagle Books
, 151 Ill. 2d at 245. We concluded the indictment was duplicitous, and therefore void, because providing a magazine, offering it for sale, and making it available are three disparate acts. 
Eagle Books
, 151 Ill. 2d at 245-46. We noted that a defendant is prejudiced by a charging instrument that alleges disparate acts in a single count because “ ‘[t]he use of the disjunctive under these circumstances causes uncertainty and conjecture as to which of the alternative acts the accused is charged with committing.’ ” 
Eagle Books
, 151 Ill. 2d at 245, quoting 
People v. Heard
, 47 Ill. 2d 501, 505 (1970). Defendant argues that possessing a photograph is an act disparate from possessing some “other visual reproduction,” which in turn is an act disparate from possessing a “depiction by computer.” The State replies that the act of possession relating to each of the three alternatives is the same act.

On the facts of this case, we agree with the State. Defendant certainly should have understood he was charged with possessing pornographic pictures of children. The disjunctive language in each count simply gave the State flexibility as to the physical form of the pictures. That flexibility did not leave defendant uncertain about which of several disparate acts he stood accused of committing, because the record makes clear that on the date of his arrest he possessed all of the pictures the police seized from him. Thus, in this case there was only one act of possession, not three disparate and alternative acts. The disjunctive language in the indictment did not prejudice defendant.

Secondly, defendant argues the indictment was impermissibly vague because its failure to specify which of the numerous pictures the police seized would be offered into evidence made it “virtually impossible” to prepare an adequate defense. We disagree. Defendant’s argument amounts to a claim that an indictment for child pornography must preview the State’s evidence. He cites no authority that supports that proposition.

People v. McNair
, 89 Ill. 441 (1878), does not aid defendant. In 
McNair
, two of the counts of the indictment charged defendant with, respectively, producing and giving away “a certain obscene and indecent pamphlet,” which was not further described in those counts. We held those counts insufficient for failure to adequately inform the defendant of the “nature and cause of the accusation.” 
McNair
, 89 Ill. at 444. In this case, the three counts of the indictment informed defendant he was accused of possessing pictures of children engaged in sexual intercourse, performing oral sex, and receiving oral sex. Unlike the defendant in 
McNair
, who was charged regarding a pamphlet that was neither identified 
nor
 described, this defendant was given, in the explicit language of the statute, a suitable description of the kinds of pictures he was accused of possessing. The defendant in 
McNair 
was given no indication why the pamphlet in question was allegedly obscene, whereas this defendant was told exactly why the pictures he was accused of possessing were child pornography. To require more detail in this case would be to improperly require that the indictment include one count for each image on the more than 100 disks seized at defendant’s home–thousands of counts–or that it preview the State’s case by telling defendant exactly what evidence would be offered.

Defendant also asserts that the indictment was insufficient to serve as a bar to double jeopardy, because the State could base a successive prosecution of defendant for child pornography on any of the pictures seized by the police but not introduced at defendant’s trial. However, defendant fails to support his assertion with argument or citation to relevant authority. Points not argued are waived. 188 Ill. 2d R. 341(e)(7).

In sum, we conclude defendant’s arguments that the indictment was defective lack merit. Because the indictment was not defective, defendant’s trial counsel was not ineffective for failing to attack it or request a bill of particulars.

II. Defendant’s Motion to Suppress

Defendant claims the chain of events leading to his arrest involved a violation of his fourth amendment right to privacy in his computer. On that basis, he argues his statements to police and the other evidence introduced against him should have been suppressed. When reviewing a circuit court’s ruling on a motion to suppress, the court upholds findings of historical fact unless they are against the manifest weight of the evidence. 
People v. Pitman
, 211 Ill. 2d 502, 512 (2004). However, the question whether the facts require suppression of the evidence is reviewed 
de novo
. 
Pitman
, 211 Ill. 2d at 512.

The fourth amendment applies only to government action. 
United States v. Jacobsen
, 466 U.S. 109, 113, 80 L. Ed. 2d 85, 94, 104 S. Ct. 1652, 1656 (1984). A search by a private person does not violate the fourth amendment. 
Jacobsen
, 466 U.S. at 115, 80 L. Ed. 2d at 95, 104 S. Ct. at 1657. Further, the fourth amendment does not prohibit the government from using information discovered by a private search, because the private search has already frustrated any expectation that the information will remain private. 
Jacobsen
, 466 U.S. at 117, 80 L. Ed. 2d at 96, 104 S. Ct. at 1658. “The Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated. In such a case the authorities have not relied on what is in effect a private search, and therefore presumptively violate the Fourth Amendment if they act without a warrant.” 
Jacobsen
, 466 U.S. at 117-18, 80 L. Ed. 2d at 97, 104 S. Ct. at 1658-59. Thus, where the government uses privately discovered information to investigate a crime without first obtaining a warrant, the fourth amendment question is whether the investigation “exceeded the scope of the private search.” 
Jacobsen
, 466 U.S. at 115, 80 L. Ed. 2d at 95, 104 S. Ct. at 1657.

In 
Jacobsen
, employees of a shipping company opened a damaged box pursuant to company policy. They found crumpled newspaper and a tube made of duct tape. They cut open the tube and found a series of four clear plastic bags, the innermost of which contained white powder. They put the bags back in the tube and the tube back in the box and called federal authorities. When the first federal agent arrived, he removed and opened the bags and field tested the powder. The Supreme Court held, 
inter alia
, that the agent’s visual inspection of the white powder was not a “search” within the meaning of the fourth amendment because it “enabled the agent to learn nothing that had not previously been learned during the private search.” 
Jacobsen
, 466 U.S. at 120, 80 L. Ed. 2d at 98, 104 S. Ct. at 1660.

Defendant argues that in this case the police exceeded the scope of Paris’s search when they opened the MPG file to view the video, because there is no evidence that Paris gave Buhrmester a “particular description” of what the video depicted before showing it to him. However, Paris testified he told Buhrmester that the video appeared to him to be child pornography. Once the police knew that, learning with more precision what the video depicted did not take them beyond the scope of Paris’ search. See 
United States v. Simpson
, 904 F.2d 607, 610 (11th Cir. 1990) (Government agents’ search “did not exceed the scope of the prior private searches *** simply because they took more time and were more thorough”). In this case, the police gained no new material information by viewing the video. They merely confirmed Paris’ report that it appeared to be child pornography.

Our decision in 
People v. Hamilton
, 74 Ill. 2d 457 (1979), is not to the contrary. In 
Hamilton
, a search of the defendant’s briefcase conducted pursuant to hospital policy by a nurse and an orderly revealed a substance that the orderly believed was heroin. However, the nurse only told the investigating officer “you better check the briefcase,” without explaining why. On those facts, we held that the heroin was not discovered by the private search, but by a second search conducted by the police. 
Hamilton
, 74 Ill. 2d at 471. In this case, because Paris told the police he thought the video was child pornography, it was discovered by the private search, not by a police search.

Defendant argues, alternatively, that 
Jacobsen
 should not apply when the object of the search is material presumptively protected by the first amendment, such as text or video. Defendant further suggests that 
Jacobsen
 should not apply to a search of the hard drive of a personal computer because it is a “highly private” area. We disagree. 
Jacobsen 
reasoned that the fourth amendment does not protect information once a private search has frustrated the defendant’s expectation that the information would remain private. 
Jacobsen
, 466 U.S. at 117, 80 L. Ed. 2d at 96-97, 104 S. Ct. at 1658-59. That reasoning applies just as well to the contents of defendant’s computer as it did to information about what was inside the elaborately sealed package in 
Jacobsen
. We conclude the police did not violate the fourth amendment when they viewed the video Paris had already viewed and reported as apparent child pornography.

It is undisputed that, after viewing the video and confirming that the computer belonged to defendant, the police had probable cause sufficient to justify arresting defendant. Subsequent to his arrest, defendant made incriminating statements and consented to the search of his home. That search in turn produced all of the apparent child pornography admitted at trial, except for the video Paris had viewed. Defendant argues that the police went beyond the scope of Paris’ search by viewing other items on his computer. The trial court agreed in its written ruling on the motion to reconsider denial of the motion to suppress, and accordingly suppressed any items obtained from defendant’s computer except the initial video. Defendant argues his consent to search and his statements were tainted because the police confronted him with the illegally obtained evidence. The State replies that the trial court ultimately found, after trial, that the police did not exceed the scope of the private search, thereby reversing its earlier finding that the police viewed other items.

It is unnecessary to resolve the controversy about whether the trial court ultimately found the police viewed additional items on defendant’s computer. Assuming, 
arguendo
, that defendant is correct, he is still not entitled to relief because nothing in the record indicates he was confronted with any illegally obtained evidence. Detective Morris testified he told defendant he was being investigated for suspected child pornography in relation to “what was recovered or what was viewed on his computer.” Morris later clarified that he “told [defendant] that what was observed on his computer, what was located while it was being worked on.” Absent record evidence that the police specifically confronted defendant with evidence obtained illegally, defendant’s argument has no factual basis.

In sum, we find no error in the admission of the evidence seized during the search of defendant’s home, nor in the admission of defendant’s statements to police.

III. Sufficiency of the Evidence

Defendant next argues the evidence was insufficient to prove him guilty beyond a reasonable doubt. When a court reviews the sufficiency of the evidence, it must ask “whether, after viewing the evidence in the light most favorable to the prosecution, 
any 
rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” (Emphasis in original.) 
Jackson v. Virginia
, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). We have adopted the 
Jackson 
formulation of the standard of review. 
People v. Collins
, 106 Ill. 2d 237, 261 (1985). It applies in all criminal cases, regardless of the nature of the evidence. 
People v. Pollock
, 202 Ill. 2d 189, 217 (2002).

In 
Ashcroft v. Free Speech Coalition
, the Supreme Court invalidated a federal statute making it a crime to possess a picture “that *** appears to be, of a minor engaging in sexually explicit conduct” because it impermissibly criminalized virtual child pornography, 
i.e.
, realistic pornographic pictures generated entirely by computer without the use of real children. 
Ashcroft v. Free Speech Coalition
, 535 U.S. 234, 256, 152 L. Ed. 2d 403, 425, 122 S. Ct. 1389, 1405 (2002) (invalidating 18 U.S.C. §2256(8)(B) (2000)). Applying 
Ashcroft
, we invalidated the definition of “child” in the section of the Criminal Code that prohibits child pornography because the definition included virtual images that only appear to depict a real child. 
People v. Alexander
, 204 Ill. 2d 472, 482-83 (2003) (invalidating section 11–20.1(f)(7) of the Criminal Code (720 ILCS 5/11–20.1(f)(7) (West Supp. 2001))). We further held the rest of the child pornography statute was severable from the statutory definition of “child.” 
Alexander
, 204 Ill. 2d at 485. We finally held that, once severed, the statute only applies to pornographic pictures of actual children because the plain meaning of the word “child” includes only actual children. 
Alexander
, 204 Ill. 2d at 485-86. Thus, the parties correctly agree that, as to each count, the State was required to prove that the picture in question depicts a real child and is not merely a virtual image. Defendant contends the State failed to prove that element beyond a reasonable doubt for any of the counts.

The sole evidence that the pictures admitted at trial depicted real children was the pictures themselves. Defendant argues that, without other evidence, the most a trier of fact could reasonably conclude beyond a reasonable doubt is that the pictures 
appear 
to depict real children, not that they do depict real children. Put another way, defendant contends that the pictures cannot stand alone as proof; rather, some further evidence, such as expert opinion, was needed to bridge the logical gap between how a picture appears and what it actually is.

All of the circuits of the federal court of appeals to consider the question have held pictures may stand alone as proof that real children are depicted. See 
United States v. Farrelly
, 389 F.3d 649, 653-55 (6th Cir. 2004) (and cases cited therein). In 
Farrelly
, the prosecution presented expert testimony regarding the age of the children in the pictures, but the expert admitted she was not qualified to opine whether the images were of actual children or had been generated by computer. The defendant argued on appeal that, absent testimony of an expert qualified to address the possibility the pictures were virtual images, he was not proven guilty beyond a reasonable doubt. In rejecting this argument, the court relied on 
United States v. Kimler
, 335 F.3d 1132, 1142 (10th Cir. 2003), which held that “[j]uries are still capable of distinguishing between real and virtual images.” 
Kimler
, in turn, relies on a passage from 
Ashcroft
, which rejects the hypothesis that virtual images are identical to real images. We will discuss that passage from 
Ashcroft 
in some detail below.

Defendant argues that the question cannot be decided by consulting precedent, because the correct answer depends on the state of computer technology at the relevant time, and the state of computer technology is constantly changing. A defendant may be denied relief to which he is entitled if courts consider only the 
state of the law 
and not the 
state of technology
. We do not understand defendant to mean precedent is completely useless, only that it cannot be the sole basis for decision. Clearly, precedent may be instructive even when it is not dispositive. Subject to that 
caveat
, we agree with defendant’s argument. Accordingly, we will consider defendant’s argument that the pictures introduced against him could not stand alone as proof that they are pictures of real children, even though the same argument has been consistently rejected in other jurisdictions.

In many instances, a particular kind of evidence may be sufficient, standing alone, to prove an element of a crime. For example, jurors may use their own reason and experience to decide whether to accept eyewitness testimony as the truth about what happened, without the aid of expert opinion regarding the reliability of eyewitnesses. 
People v. Enis
, 139 Ill. 2d 264, 289-90 (1990). In other instances, evidence cannot stand alone. For example, the prosecution could not prove a substance is marijuana simply by introducing the substance and asking the trier of fact to apply its reason and experience. See 
People v. Park
, 72 Ill. 2d 203, 209-11 (1978) (holding inadmissible a witness’ opinion that a substance was marijuana because the opinion was based only on four years’ experience as a police officer and not chemical or microscopic analysis). At oral argument, defendant suggested the pictures in this case cannot stand alone, just as a substance admitted in the typical drug case cannot. He suggested that, absent evidence specifically identifying the children in the pictures, expert testimony was required to prove they were pictures of real children.

Defendant is certainly correct that expert testimony might have aided the trier of fact. It could conceivably have shown whether realistic virtual child pornography existed at the relevant time and, if it did, whether the pictures introduced against defendant were virtual images. However, the comparison between this case and a drug prosecution, though instructive, does not support defendant’s claim. In 
Park
, we relied on statistics from the Wisconsin State Crime Laboratory showing that 1 out of 7 samples turned in as marijuana proved to be something else. We concluded that nonexperts are unacceptably prone to mistake other plants for marijuana. 
Park
, 72 Ill. 2d at 208. By comparison, in this case we find little or no reason to fear that realistic virtual child pornography exists and was so readily available as to create an unacceptable risk that the trial judge, unaided by expert testimony, mistook legal computer-generated images for illegal child pornography.

In taking the contrary view, the appellate court dissent stressed the fact that Congress found, prior to the beginning of this case, that highly realistic virtual child pornography exists. 346 Ill. App. 3d at 499, (Slater, J., concurring in part and dissenting in part), citing 
Alexander
, 204 Ill. 2d at 477-78, quoting 18 U.S.C. §2251, Congressional Findings, Note (5) (2000). We give Congress’ finding due consideration. However, we find the reasoning of 
Ashcroft 
to be persuasive proof that realistic virtual images are not widely available. See 
People v. Normand
, No. 97984, slip op. at 11 (June 3, 2005). The 
Ashcroft 
Court, in pertinent part, reasoned as follows:

“The Government next argues that its objective of eliminating the market for pornography produced using real children necessitates a prohibition on virtual images as well. Virtual images, the Government contends, are indistinguishable from real ones; they are part of the same market and are often exchanged. In this way, it is said, virtual images promote the trafficking in works produced through the exploitation of real children. The hypothesis is somewhat implausible. 
If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice.
” (Emphasis added.) 
Ashcroft
, 535 U.S. at 254, 152 L. Ed. 2d at 423, 122 S. Ct. at 1403-04.

The italicized portion applies directly to defendant’s argument that, for all we know, there are virtual images that are indistinguishable from real ones. Moreover, the italicized passage is clearly correct. Because there is obviously substantial demand for illegal child pornography, people would be all too willing to produce a legal substitute were it readily available. The “market” for illegal child pornography would quickly be flooded with the legal substitute. Furthermore, the comparison between child pornography and illegal drugs implies a further conclusion, not expressly stated in 
Ashcroft
. If a legal substance that does what marijuana or cocaine do ever became available, it would obviously change the drug trade dramatically. Such a change could hardly go unnoticed, at least in legal and law enforcement circles. The same applies to child pornography. If a legal substitute–realistic virtual pornography–became available, it would dramatically affect the “market” for child pornography and would surely not go unnoticed. See 
Normand
, slip op. at 11. Therefore, because we are not aware of it now, it is highly unlikely that realistic virtual child pornography was available on the day defendant was arrested some 3½ years ago.

The prosecution bears the burden of proving each and every element of the crime charged beyond a reasonable doubt. 
Maggette
, 195 Ill. 2d at 353. However, mere possibilities or speculation are insufficient to raise reasonable doubt. See 
People v. Evans
, 209 Ill. 2d 194, 211-12 (2004). Defendant’s suggestion that the pictures introduced against him at trial may in fact be virtual images relies on the congressional finding, made prior to his arrest, that realistic virtual images were available. He also argues, alternatively, that we simply do not know whether such images were available and therefore the prosecution had the burden of proving that they were not. We disagree. Our analysis in the previous paragraph shows that the congressional finding was likely incorrect at the relevant time, and that defendant does nothing more than raise a bare possibility that is insufficient to overturn the verdict in this case.

In sum, we conclude the trier of fact in this case could distinguish real from virtual pictures beyond a reasonable doubt simply by viewing the pictures. After reviewing the pictures ourselves, we hold a trier of fact could reasonably find they depict real children.

Defendant next argues the State failed to prove beyond a reasonable doubt that he intended to disseminate the pictures he possessed. He argues, first, that all of the evidence, including his admission to police that he exchanged child pornography over the Internet, at most proves past dissemination, not a present intent to disseminate. Defendant points out he did not have telephone service at the time of his arrest, which, he suggests, tends to show he had no ability to access the Internet, and therefore no present intent to disseminate. We disagree. Defendant’s admission he would exchange child pornography on the Internet using his computer, on its face, describes his habit or practice. It was not couched as something he used to do but had given up. It supports a reasonable inference that he intended to continue exchanging child pornography on the Internet when he could. Furthermore, defendant had his computer repaired immediately before his arrest, which implies he intended to continue using it. The computer contained software for Earth Link, which is an Internet Service Provider (ISP). Morris testified Earth Link was not defendant’s ISP, but that an unidentified “friend” of defendant had an account with Earth Link. Morris testified the friend told him defendant used the friend’s Internet service. The fact defendant had no phone service therefore does little or nothing to defeat the inference that he intended to continue his admitted practice of exchanging child pornography on the Internet.

Defendant also argues his admission to police that he exchanged pornography on the Internet was insufficiently corroborated to establish the 
corpus delicti 
of the crime of possession with intent to disseminate. A criminal conviction may not be based solely on an uncorroborated confession. 
People v. Willingham
, 89 Ill. 2d 352, 358-59 (1982). There must be some evidence, independent of the confession, tending to show the crime did occur. 
Willingham
, 89 Ill. 2d at 358. However, there is no requirement that the corroborating evidence prove the existence of the crime beyond a reasonable doubt. 
Willingham
, 89 Ill. 2d at 359. Rather, if the defendant’s confession is corroborated, then the confession and the corroboration may be considered together to determine whether the crime, and the fact the defendant committed it, have been proven beyond a reasonable doubt. 
Willingham
, 89 Ill. 2d at 360.

In this case there is ample corroboration of defendant’s admission that he exchanged child pornography over the Internet. The computer containing Earth Link software, Morris’ testimony that defendant’s friend told him that defendant accessed the Internet through the friend’s Earth Link account, and the numerous digital pictures on the disks discovered in defendant’s home all corroborate defendant’s admission.

In sum, the prosecution introduced sufficient evidence to prove, for each of the three counts on which defendant was convicted, that defendant possessed a pornographic picture of a real child with the intent to disseminate.

CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.

Affirmed
.