# Illinois Official Reports

## Appellate Court

---

### *People v. Walker*, 2020 IL App (1st) 162305

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PIERRE WALKER, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-16-2305 |
| Filed | March 20, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CR-2717; the Hon. Arthur F. Hill Jr., Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Erin Sostock, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Kathryn Schierl, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Justices Connors and Harris concurred in the judgment and opinion. |

## OPINION

¶ 1      Defendant-appellant Pierre Walker[1] appeals his April 2016 conviction for unlawful use of a weapon by a felon, for which he was sentenced to eight years and six months imprisonment. On appeal, the defendant argues that (1) trial counsel was ineffective for failing to move to quash the search warrant and suppress evidence, (2) the State failed to prove that he possessed a firearm in his own abode, and (3) the order for fines and fees should be amended. For the reasons that follow, we reverse the judgment of the circuit court of Cook County.

¶ 2                                      BACKGROUND

¶ 3      On October 28, 2015, Chicago Police Officer Matthew Diblich swore a complaint for a search warrant requesting to search the defendant and the premises of the second floor apartment located at 4249 West Jackson Boulevard in Chicago in order to seize a firearm that was evidence of the crime of unlawful use of a weapon by a felon. Officer Diblich averred that he had probable cause to believe that the firearm would be found with the defendant at that location, referring to a conversation with a registered confidential informant who had provided accurate information in the past. The circuit court issued the warrant and Officer Diblich and Chicago Police Officer Ohle executed the warrant along with 6 to 10 other police officers. The officers arrested the defendant after finding him in the apartment along with two boxes of ammunition.

¶ 4      In November 2015, the defendant was indicted for unlawful use or possession of a weapon by a felon. The indictment alleged that he "knowingly possessed in his own abode any firearm ammunition, after having been previously convicted of the felony offense of manufacture/delivery [of cocaine]."

¶ 5      A bench trial commenced in April 2016 with testimony from Officers Diblich and Ohle. The officers testified that when they entered the three-bedroom apartment at 4249 West Jackson Boulevard, they found the defendant sleeping on a "makeshift" bed in the dining room area. There were five people in the apartment, besides the defendant, who were all detained while the search was underway. Officer Diblich could not recall where in the apartment those five people were when the officers entered to execute the search warrant.

¶ 6      Officer Diblich testified that during the search of the second bedroom, which did not have a bed, another officer found two boxes of ammunition in the top drawer of a dresser. After Officer Diblich photographed the ammunition and placed it into an evidence bag, he brought the defendant into the room and showed him the ammunition as well as some cannabis that was also recovered from the bedroom. Officer Diblich then read the defendant his rights, and the defendant agreed to give a statement, admitting the bullets were his. Later, after the defendant was arrested and taken to the police station, he told Officer Ohle, "I can't wait to find your kids. If you think *** that all I got is the bullets."

¶ 7      On cross-examination, Officer Diblich admitted that he did not find anything linking the defendant to the room where the bullets were found.

---

[1]Pierre Walker is also known as Jamal or Jamel Walker. The State's witnesses at trial referred to the defendant as Pierre, while the defense witnesses referred to him as Jamal.

¶ 8        Following the officers' testimony, the State introduced into evidence a certified copy of the defendant's 2004 conviction for manufacture and delivery of cocaine. The defendant then moved for a directed verdict, which was denied.

¶ 9        The defendant's girlfriend of 13 years, Dana Johnson, testified on his behalf. According to Johnson, in 2015, she lived with the defendant at two different addresses. Between January and August 2015, the defendant and Johnson lived at 615 East Gunderson Drive in Carol Stream, Illinois. After that, they lived at 619 North Meadows Boulevard in Melrose Park, Illinois. Johnson produced a check stub and a traffic ticket mailed to the defendant at the East Gunderson address, as well as a W-2 sent to the defendant at the North Meadows address.

¶ 10       Johnson testified that the defendant's family lived at the Jackson Boulevard address where the defendant was arrested. She further stated that when the defendant was not sleeping at their house, he would sleep there. In October 2015, the defendant slept the "majority" of nights with Johnson at their house but spent at least eight nights at Jackson Boulevard. Johnson explained that he would visit his family at Jackson Boulevard and would stay overnight if he was "drunk or something."

¶ 11       As his final witness, the defendant called Keith Terrell, who lived at the Jackson Boulevard address with three other people. Terrell, who was not related to the defendant, said that the defendant did not live at that address and did not keep any belongings there. However, he testified that the defendant stayed the night on October 28, 2015, because the defendant was drunk. Terrell further testified that the bedroom where the bullets were found was Antoine Walker's bedroom. Indeed, Terrell testified that Antoine Walker was in that bedroom with a woman who lived in the apartment when the police entered to execute the warrant. The police then took all the occupants of the apartment into the front room while they searched the premises.

¶ 12       Following closing arguments, the court found the defendant guilty of unlawful possession of a weapon by a felon.

¶ 13       The court ultimately sentenced the defendant to eight years and six months of imprisonment. Following the denial of his motion to reconsider sentence, the defendant timely appealed.

¶ 14                                    ANALYSIS

¶ 15       We note that we have jurisdiction to review this matter, as the defendant filed a timely notice of appeal following sentencing. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); R. 606 (eff. July 1, 2017).

¶ 16       On appeal, the defendant raises three contentions of error, but because we find that his challenge to the sufficiency of the evidence is dispositive, we address it first.

¶ 17       A challenge to the sufficiency of the evidence requires the reviewing court to consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of a crime *beyond a reasonable doubt. People v. Newton*, 2018 IL 122958, ¶ 24. We will not substitute our judgment for that of the trier of fact, nor will we reverse a conviction unless the evidence is so improbable or unsatisfactory so as to raise a reasonable doubt of a defendant's guilt. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 18       The defendant argues that the State failed to prove that he possessed the firearm ammunition in his own abode pursuant to section 24-1.1(a) of the Criminal Code of 2012

(Code). (720 ILCS 5/24-1.1(a) (West 2014)). Section 24-1.1(a) of the Code, under which the defendant was charged, provides in relevant part that

> "[i]t is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business *** any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." *Id.*

¶ 19    Initially, the parties dispute whether the State was required to prove that Jackson Boulevard was the defendant's abode as an element of the offense of unlawful possession of a weapon by a felon. Our supreme court has held that the "essential elements" of the offense of unlawful possession of a weapon by a felon are (1) the knowing possession of a firearm and (2) a prior felony conviction. *People v. Gonzalez*, 151 Ill. 2d 79, 85 (1992).[2] The court has explicitly held that there is "no requirement" that an offender be using or possessing the weapon "in any particular place." *Id.* at 87; see also *People v. Hester*, 271 Ill. App. 3d 954, 956 (1995) ("[T]he situs of the defendant's possession does not constitute a material element of the offense [of unlawful use of a weapon by a felon]."); *People v. Lindsey*, 324 Ill. App. 3d 193, 201 (2001) (same). Accordingly, we agree with the State that, notwithstanding its representations to the contrary at trial, it was *not* in fact required to prove that the defendant was in his own abode when he possessed the ammunition as an element of the offense of unlawful possession of a weapon by a felon.

¶ 20    That leaves us to address whether the State's evidence was sufficient to prove the defendant knowingly possessed the ammunition recovered from the dresser drawer. (Neither party disputes that the defendant was a convicted felon.) Possession may be either actual or constructive. *People v. Terrell*, 2017 IL App (1st) 142726, ¶ 18. Here, the defendant did not actually possess the ammunition, and so the State was required to prove constructive possession. Constructive possession is almost always subject to proof by circumstantial evidence. *Id.* In order to establish the defendant's constructive possession, the State was required to prove that (1) the defendant had knowledge of the contraband and (2) the defendant exercised immediate and exclusive control over the area where the contraband was found. *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 23.

¶ 21    In support of its argument that it proved the defendant constructively possessed the ammunition, the State points to his statements to Officers Diblich and Ohle. Specifically, the defendant admitted to Officer Diblich that the bullets were his and later admitted the same to Officer Ohle when he suggested that he had more than merely bullets to threaten the officer's children.

¶ 22    But in criminal proceedings, the State must prove beyond a reasonable doubt two propositions—namely, that a crime was committed, also known as the *corpus delicti*, and that the defendant committed the crime. *People v. Smith*, 2015 IL App (1st) 132176, ¶ 18. Importantly, a confession alone is insufficient to prove the *corpus delicti* of an offense; there must be some corroborating evidence tending to prove that a crime has been committed. *People*

---

[2]To be sure, this case is several decades old, but the relevant language of section 24-1.1(a) of the Code has not changed. Indeed, the fact that the legislature has amended section 24-1.1 of the Code many times in the intervening years *without* a change in the relevant language of subsection (a) leads us to conclude that the legislature acquiesced in *Gonzalez*'s interpretation. See *People v. Phagan*, 2019 IL App (1st) 153031, ¶ 104 (citing *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 458-59 (1997)).

- 4 -

*v. Lara*, 2012 IL 112370, ¶ 17. This corroborating evidence need only *tend* to show the commission of an offense. *Id.* ¶ 18. It is not necessary that the independent evidence establish that the defendant committed a crime beyond a reasonable doubt. *Id.* Rather, it is sufficient if the evidence tends to connect the defendant with a crime. *Id.* ¶ 44.

¶ 23    Before addressing the merits of this issue, we first acknowledge that the defendant did not explicitly argue that the State failed to prove the *corpus delicti*. Instead, on appeal, he generally maintained that the evidence was insufficient to prove he constructively possessed the ammunition. Ordinarily (and as the State took pains to point out in its petition for rehearing), a reviewing court should not search the record for reasons to reverse a trial court judgment. See *People v. Givens*, 237 Ill. 2d 311, 325 (2010). But when a "clear and obvious error" occurred in the trial court, this court does not lack the authority to address unbriefed issues. *Id.* We will not turn a blind eye to an obvious error merely because it may not have been presented with complete clarity by the parties.

¶ 24    *Corpus delicti* and the sufficiency of the evidence (which the defendant indisputably challenged) are closely related. See *People v. McCullough*, 2015 IL App (2d) 121364, ¶¶ 72, 76 (addressing *corpus delicti* where defendant challenged the sufficiency of the evidence); *People v. Hurry*, 2013 IL App (3d) 100150-B, ¶ 11 ("Defendant argues that the State failed to prove the *corpus delicti* of 8 of the 10 charges ***. *Defendant's contention is a challenge to the sufficiency of the evidence.*" (Emphasis added.)). *People v. Harris*, 333 Ill. App. 3d 741 (2002), is particularly instructive. There, the court held that the evidence was insufficient to convict defendant where no corroboration supported his confession. *Id.* at 752. In reaching this conclusion, the court explained, "[i]n the context of a challenge to the sufficiency of the evidence, it is the defendant's statements, together with the corroborating evidence taken as a whole, that are required to pass the rational fact finder test." *Id.* In other words, the evidence to convict a defendant cannot be sufficient unless there is proof of *corpus delicti* beyond a reasonable doubt. See *Smith*, 2015 IL App (1st) 132176, ¶ 18. Because the defendant explicitly challenged the sufficiency of the evidence, we reject the State's contention that it was error for this court to address the more specific issue of whether the State proved the *corpus delicti*.

¶ 25    Turning then to the merits of the *corpus delicti* issue, we hold that, even viewed in the light most favorable to the State, there was insufficient corroborating evidence to show that the defendant constructively possessed the ammunition. The only connection that the defendant had to the bullets was that he was sleeping in the apartment where they were found. But this alone was insufficient to tend to show the defendant had knowledge or immediate and exclusive control over the ammunition under the unique circumstances of this case. First, the defendant was in a different room from where the bullets were located; he was sleeping on a makeshift bed in the dining room, while the bullets were in an adjacent bedroom. Second, the bullets themselves were inside a dresser drawer in the bedroom and not in plain view. Third, two other individuals were in the room where the bullets were found when the police entered. Finally, and perhaps most significantly, there was nothing linking the defendant to the residence, such as bills, clothing, or personal belongings. Contra *People v. Spencer*, 2012 IL App (1st) 102094, ¶¶ 4, 24 (finding that State proved *corpus delicti* of offense of unlawful use of a weapon where police recovered gun from top of kitchen cabinet and where, in addition to defendant's incriminating statement, police recovered two photographs of defendant, an identification card listing the address as defendant's residence, men's clothing, and mail addressed to defendant from inside a bedroom of the house).

¶ 26    In this case, in addition to the fact that there was no evidence other than the defendant's statement linking him to ownership of the bullets, there was no evidence linking him to the room where the bullets were found. However, there *was* evidence that the defendant actually lived elsewhere. Also, there was evidence that two of the other five occupants of the house were actually in the room where the bullets were found. When all of this is taken together, it cannot be said that the State's evidence met its burden of proof, beyond a reasonable doubt. For this reason, we find the evidence insufficient to sustain the defendant's conviction and reverse the judgment of the circuit court of Cook County. And because we reverse the defendant's conviction, we need not address his claim of ineffective assistance of counsel or his contentions of error in the imposition of fines and fees.

¶ 27                               CONCLUSION

¶ 28    The defendant's conviction for unlawful use of a weapon by a felon is reversed.

¶ 29    Reversed.