2021 IL App (1st) 190335-U

No. 1-19-0335

Order filed March 29, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 17807 |
| | ) | |
| PATRICK SAGO, | ) | Honorable |
| | ) | Carl B. Boyd, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Hyman and Coghlan concurred in the judgment.

**ORDER**

¶ 1     *Held*: The State provided sufficient evidence corroborating defendant's statement to establish the *corpus delicti* of armed habitual criminal. We vacate defendant's 2012 conviction for aggravated unlawful use of a weapon where the State has confirmed that defendant was convicted under an unconstitutional statutory provision.

¶ 2     Following a bench trial, defendant Patrick Sago was found guilty of armed habitual criminal (AHC), aggravated unlawful use of a weapon (AUUW), and two counts of unlawful use or possession of a weapon by a felon (UUWF). The trial court merged the offenses into one count

of AHC and sentenced Sago to six years' imprisonment. Sago argues on appeal that the State failed to prove the *corpus delicti* of any of the offenses, and that we should vacate his 2012 conviction for AUUW because it arose from a statutory provision that was later found unconstitutional. We affirm Sago's AHC conviction and vacate his 2012 AUUW conviction because the State has confirmed that Sago was convicted under an unconstitutional statutory provision.

¶ 3                              BACKGROUND

¶ 4      Sago was charged by superseding indictment with AHC (720 ILCS 5/24-1.7(a)(2) (West 2016)) (count I); AUUW predicated on possessing an uncased, loaded, immediately accessible firearm while lacking a valid concealed carry license (CCL) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West Supp. 2017)) (count II); AUUW predicated on possessing a firearm while lacking a valid Firearm Owners Identification (FOID) card (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West Supp. 2017)) (count III); two counts of UUWF (720 ILCS 5/24-1.1(a) (West 2016)) (counts IV and V); and reckless discharge of a firearm (720 ILCS 5/24-1.5(a) (West 2016)) (count VI).

¶ 5      At trial, Harvey chief of police Gregory Thomas[1] testified that, on December 4, 2017, he and a partner responded to a call of shots fired near Thornton Township High School, on the 100 block of Broadway Avenue, in Harvey. Thomas arrived at approximately 11:57 a.m. and saw Sago, whom he identified in court, crouching in a "bushy area" near train tracks in a parking lot or field a few hundred feet from the school.

¶ 6      Thomas told Sago he was investigating a call of shots fired and that Sago matched the description of the subject. Thomas asked Sago why he was crouching in the bushes and Sago

---

[1] Thomas stated that he was the deputy chief of police on December 4, 2017, but he was the chief at the time of trial.

advised that he was looking for cannabis he had dropped. Thomas proceeded to the bushes and discovered a silver and black .45-caliber Taurus semiautomatic handgun on the ground, "near, if not in the exact same area" Sago had crouched. The firearm was approximately 900 feet from the school and no one else was near it. The firearm's slide was locked, signifying that it had exhausted its rounds. Thomas identified a photograph of himself standing approximately five feet from where Sago was in the bushes, photographs depicting the firearm in the bushes, and the actual firearm.

¶ 7       Sago was arrested and transported to the police station, where Thomas advised Sago of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Sago agreed to speak and stated that a reddish-orange vehicle with multiple occupants drove past him, and the occupants shot at him. Sago ran and fell, and saw people running toward him. Sago fired eight or nine shots into the air to scare them away. Thomas asked if Sago had a "45 Taurus," and Sago agreed that he did.

¶ 8       After this conversation with Thomas, Sago agreed to give a video-recorded statement. The video was admitted into evidence and published and is in the record on appeal.

¶ 9       In the video, Sago states that he encountered an orangish or reddish four-door vehicle while walking near the train tracks by the school. The vehicle, which had three or four occupants, drove past the tracks, stopped, and a person in the back seat exited and began shooting towards Sago. Sago saw the shooter's face and believed it was a person called "Peanut." Sago also recognized the driver. Sago ran down the tracks and fell, bruising his arm and hand. When he fell, Sago initially believed he had been shot in the back. The shooter ran towards Sago, who rolled onto his back and fired his weapon eight or nine times into the air. Thomas asks, "You said you had a 45 Taurus Millennium?" and Sago responds, "Yes."

¶ 10    On cross-examination, Thomas testified that a security guard placed the call reporting shots fired at 11:57 a.m. and described the subject. Thomas did not know if any other calls came in contemporaneously with the call to which he responded. Approximately three minutes later, Thomas arrived at the school and spoke with the principal for two or three minutes, but the principal was unable to identify which security guard placed the call. Accordingly, Thomas did not conduct a show-up for the caller to identify Sago. Nobody identified Sago as the shooter or the location from which the shots were fired, besides the dispatch call indicating that it was near the school. No one performed a follow-up investigation to learn the identity of the caller.

¶ 11    According to a call sheet, dispatchers recorded at 12:26 p.m. that Thomas discovered the firearm. The firearm was a semiautomatic weapon which discharges shell casings when fired. At the police station, Thomas asked Sago where he was when he fired the weapon, and officers returned to that location but did not discover any shell casings. The firearm was not submitted for fingerprint or DNA analysis because Sago admitted to possessing and firing it. A toy firearm was also discovered at the scene, embedded in leaves and dirt.

¶ 12    At the police station, Sago was cooperative and answered Thomas's questions. After Sago gave the unrecorded statement, Thomas offered him the opportunity to give a recorded statement to ensure its accuracy, and Sago agreed. Thomas did not ask Sago to sign a photograph of the firearm or ask how he acquired the firearm.

¶ 13    On redirect examination, Thomas testified, while his report that a firearm was discovered was logged at 12:26 p.m., he may not have discovered the weapon at the time. Thomas confirmed the firearm was recovered from the area where Sago knelt. No other .45-caliber Taurus was in that area.

¶ 14    The State entered stipulations and certified abstracts showing that as of January 25, 2018, Sago had not been issued a FOID card or CCL. The State also entered stipulations and certified statements of conviction showing that Sago was convicted of UUWF in 2016 and AUUW in 2014.

¶ 15    Following argument, the trial court found Sago not guilty of AUUW based on possessing an uncased, loaded, immediately accessible firearm without a valid CCL (count II), and reckless discharge (count VI). However, the court found that Thomas credibly testified that a firearm was discovered in Sago's immediate vicinity and Sago admitted to possessing the firearm. Accordingly, the court found Sago guilty of counts I, III, IV, and V.

¶ 16    Sago moved for judgment of acquittal or for a new trial, arguing, *inter alia*, the trial court's ruling was inconsistent in that it found Sago's admission to Thomas sufficient to convict him on counts I, III, IV, and V, but not counts II and VI, and the State failed to prove the *corpus delicti* of the charged offenses.

¶ 17    At a hearing on Sago's motion, the trial court viewed Sago's video-recorded statement again and announced it "should have" found Sago guilty of discharging the firearm as well as possessing it. However, the court maintained, while it "may have overlooked" that Sago admitted to firing the weapon, the State proved Sago guilty of possessing the firearm beyond a reasonable doubt where Sago admitted to possessing and firing the weapon that Thomas discovered in Sago's vicinity. The court denied Sago's motion.

¶ 18    Following a sentencing hearing, the trial court merged counts III, IV, and V into count I and sentenced Sago to the minimum six years' imprisonment.

¶ 19                                ANALYSIS

¶ 20    On appeal, Sago first argues the State failed to prove the *corpus deliciti* of AHC, AUUW, and UUWF, where insufficient evidence corroborated his admission that he possessed the firearm.

¶ 21    As an initial matter, we lack jurisdiction to review the trial court's findings of guilt on those counts which the trial court merged without imposing sentence. Our jurisdiction "extends only to final judgments and *** there is no final judgment in a criminal case unless a sentence has been imposed." *People v. Relerford*, 2017 IL 121094, ¶ 71. We have no jurisdiction to determine the validity of "unsentenced convictions." *Id.* ¶¶ 74-75. Consequently, we will not consider the merits of Sago's challenges to the court's findings on counts III, IV, and V, and will only address his conviction on count I for AHC.

¶ 22    The State must prove each element of a charged offense beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35. When evaluating the sufficiency of the evidence, a reviewing court views the evidence in the light most favorable to the prosecution and determines whether any rational trier of fact could have found the required elements of the offense beyond a reasonable doubt. *Id.* A reviewing court will not retry the defendant, and all reasonable inferences are drawn in favor of the prosecution. *People v. Newton*, 2018 IL 122958, ¶ 24. A conviction will only be disturbed if the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *Id.*

¶ 23    To prove Sago guilty of AHC, the State was required to establish that Sago possessed a firearm and had been twice convicted of certain prior offenses. 720 ILCS 5/24-1.7(a)(2) (West 2016). Sago does not contest that he has two qualifying prior offenses but argues that the State failed to provide evidence corroborating his admission that he possessed a firearm, and therefore, did not prove the *corpus delicti* of AHC.

¶ 24    To sustain a conviction, the State must prove beyond reasonable doubt both that a crime was committed, the *corpus delicti*, and that the defendant committed the crime. *People v. Walker*, 2020 IL App (1st) 162305, ¶ 22. The *corpus delicti* cannot be proven by a defendant's confession alone. *Id.* Rather, the State must provide independent corroborating evidence which tends to show the commission of an offense. *Id.* The independent corroborating evidence need not prove the defendant committed the offense beyond a reasonable doubt, but only "*tend to show*" the crime was committed. (Emphasis in original.) *People v. Lara*, 2012 IL 112370, ¶ 18. It is unnecessary for the independent evidence to exactly match the details of the defendant's confession; the evidence is sufficient so long as it corroborates some of the circumstances defendant related. *Id.* ¶¶ 42, 45. We view the corroborating facts in the light most favorable to the State. *People v. Pitts*, 2016 IL App (1st) 132205, ¶ 31.

¶ 25    "Possession may be actual or constructive." *People v. Balark*, 2019 IL App (1st) 171626, ¶ 94. Actual possession is the exercise of present personal dominion over illicit material and exists when the defendant exercises immediate and exclusive dominion or control over the illicit material. *Id.* However, it does not require "present personal touching" of the material. (Internal quotation marks omitted.) *Id.* Actual possession of a weapon may be proven by evidence that the defendant tried to conceal or throw away the weapon. *Id.* Constructive possession exists where the defendant is not found in actual possession of contraband but has the intent and capability to maintain control and dominion over it. *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27. Constructive possession may be shown by evidence the defendant had knowledge of the contraband's presence and immediate and exclusive control over the area where it was found. *Id.*

¶ 26    Sago argues that the State was required to prove that he had constructive possession of the firearm because no evidence corroborated his admission that he had actual possession over the firearm besides the anonymous call of shots fired. The State argues that Sago had actual possession of the firearm where Thomas found the firearm near Sago in the bushes, even if Sago was not touching the weapon at that moment.

¶ 27    Here, Sago admitted to Thomas that he possessed a .45-caliber Taurus firearm and discharged it eight or nine times near the train tracks by the school. Sago's admission that he handled and discharged the weapon is an admission of actual possession. See *Balark*, 2019 IL App (1st) 171626, ¶ 94 (actual possession is the exercise of present personal dominion over contraband).

¶ 28    As for the evidence corroborating that admission, Thomas testified that he responded to a call of shots fired near the school. He arrived approximately three minutes later. After speaking to the principal for two or three minutes, Thomas saw Sago crouching in a bushy area near train tracks. Sago stated he was looking for cannabis he had dropped. Thomas discovered a .45-caliber Taurus firearm on the ground "near, if not in the exact same area" where Thomas saw Sago. The firearm's slide was locked, indicating it had exhausted its ammunition. Sago was the only person present. Although Thomas did not see Sago possess the firearm on his person, viewing Thomas's testimony in the light most favorable to the State (*Pitts*, 2016 IL App (1st) 132205, ¶ 31), we conclude that the State provided sufficient evidence corroborating Sago's admission that he had actual possession of the firearm to establish the *corpus delicti* of AHC.

¶ 29    Corroborating Sago's admission did not require the State to present physical or forensic evidence linking Sago to the firearm. See *Lara*, 2012 IL 112370, ¶ 39 (noting that *corpus delicti*

rule could be satisfied "*despite the absence of any physical evidence*" (emphasis in original)). Further, while the State may not have established the exact distance between where Thomas saw Sago and where he recovered the firearm, Thomas testified the firearm was "near, if not in the exact same area" as Sago, who confirmed the firearm he possessed was the same model that Thomas recovered. See *id.* ¶ 18 (corroborating evidence need not prove defendant's guilt beyond a reasonable doubt). Sago's suggestion that he may have been "20 feet or more" from the firearm, which could have belonged to someone else, is unavailing, as on review, the independent evidence establishing the *corpus delicti* must be viewed in the light most favorable to the State. *Pitts*, 2016 IL App (1st) 132205, ¶ 31.

¶ 30    Sago compares his case to *People v. Harris*, 2012 IL App (1st) 100077. In *Harris*, an officer testified that, before a shooting, an anonymous eyewitness saw the defendant remove a black object from a vehicle, and after the shooting, return the black object to the vehicle. *Id.* ¶ 10. A black firearm was recovered from the center console of the vehicle. *Id.* ¶ 8. The defendant told a police officer he had been shot at, retrieved his firearm from the vehicle, and returned fire. *Id.* ¶ 9. The defendant was convicted of three counts of AUUW, including one count predicated on possessing a firearm on or about his person on a public street. *Id.* ¶¶ 1, 14. We reversed that conviction because the only evidence corroborating the defendant's admission that he possessed a firearm on or about his person was the officer's hearsay testimony regarding the witness's statement, which does not satisfy the State's burden in establishing the *corpus delicti*. *Id.* ¶¶ 20-26; see also *Pitts*, 2016 IL App (1st) 132205, ¶ 38 ("*Harris* stands for the proposition that a hearsay statement may not be the necessary corroborating evidence to support the *corpus delicti* of an offense.").

¶ 31   We find *Harris* distinguishable because, here, the *corpus delicti* of AHC was not established by the anonymous call to which Thomas responded. Rather, Sago's admission was corroborated by Thomas's observation of Sago crouching "near, if not in the exact same area" where Thomas found the firearm. Moreover, none of the counts on which Sago was found guilty required a showing that he discharged a firearm, and that the State may not have corroborated Sago's statement that he discharged the firearm does not prevent us from concluding that the State sufficiently corroborated Sago's admission to possessing the firearm. See *Lara*, 2012 IL 112370, ¶ 45 ("Corroboration of only some of the circumstances related in a defendant's confession is sufficient."). Accordingly, we conclude that a rational trier of fact could find the essential elements of AHC beyond a reasonable doubt.

¶ 32   Next, Sago argues, and the State concedes, that we should vacate his 2012 conviction for AUUW, which Sago asserts was under the statutory provision that our supreme court found unconstitutional in *People v. Aguilar*, 2013 IL 112116.

¶ 33   A defendant may challenge a conviction premised on an invalid statute at any time in a court with jurisdiction over the parties and case. *In re N.G.*, 2018 IL 121939, ¶ 57. When a constitutional infirmity is raised, the court has an independent duty to vacate the void judgment. *Id.* Accordingly, we have an affirmative duty to invalidate AUUW convictions under the provision found unconstitutional in *Aguilar* (*People v. Cross*, 2019 IL App (1st) 162108, ¶ 183), specifically, section 24-1.6(a)(1), (a)(3)(A) of the Criminal Code of 1961 (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)), which categorically prohibited carrying an uncased, loaded, and immediately accessible firearm outside one's land, abode, or fixed place of business.

¶ 34    In its brief, the State confirmed that Sago's "2012 conviction for Aggravated Unlawful Use of a Weapon (AUUW) should be vacated" because he "was convicted was under 720 ILCS 5/2401.6, (a)(3)(A)." Accordingly, we find that Sago's 2012 conviction for AUUW, under 720 ILCS 5/2401.6, (a)(3)(A), is void and hereby vacated. See *N.G.*, 2018 IL 121939, ¶ 36

¶ 35                                    CONCLUSION

¶ 36    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed, and Sago's 2012 conviction for AUUW is vacated.

¶ 37    Affirmed.