2022 IL App (1st) 192311-U

FIFTH DIVISION
May 27, 2022

No. 1-19-2311

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 1774 |
| | ) | |
| | ) | Honorable |
| REGINALD BERRY, | ) | Jackie Marie Portman-Brown |
| | ) | and Sophia Atcherson, |
| Defendant-Appellant | ) | Judges, presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1   *Held*:  We affirm defendant's convictions for unlawful use of a weapon by a felon and reckless discharge of a firearm, because independent evidence tended to show defendant shot himself, corroborating his admission, and the evidence as a whole was sufficient to prove him guilty beyond a reasonable doubt.

¶ 2   Following a bench trial, defendant Reginald Berry was convicted of unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2016)) and reckless discharge of a firearm (720 ILCS 5/24-1.5(a) (West 2016)). The court sentenced defendant to concurrent prison

terms of four years for UUWF and two years on the reckless discharge count. On appeal, he argues the State failed to prove him guilty beyond a reasonable doubt because (1) there was no eyewitness testimony or medical, forensic, or physical evidence to support the charged offenses, and (2) no evidence was presented to corroborate defendant's admission that he shot himself, in violation of the corpus delicti rule. We affirm.

¶ 3    The State proceeded to trial against defendant on reckless discharge of a firearm which endangered the bodily safety of an individual, and two counts of UUWF: count I for knowingly possessing a firearm and count II for knowingly possessing firearm ammunition after previously being convicted of felony aggravated driving under the influence (DUI).

¶ 4    At trial, Chicago police officer Peter Kalenik testified that, on December 31, 2017, at around 10:37 p.m., he responded to a dispatch of a "person shot" at a second-floor apartment on South Komensky Avenue. Once inside the apartment, Kalenik observed an ongoing New Year's Eve party. Defendant, whom Kalenik identified in court, was wounded on the ground in the front room. He was bleeding, and appeared to have a gunshot wound around his waistband area.

¶ 5    Shortly thereafter, paramedics arrived to treat defendant. Kalenik was wearing a working body camera at the time. He watched as the paramedics removed defendant's pants to treat his injuries. Kalenik heard defendant tell the paramedics that "he shot himself." Eventually, the paramedics transported defendant from the scene.

¶ 6    Kalenik later retrieved defendant's pants from the front room of the apartment. They were stained with blood and had a hole in the knee that "seemed to be from a fired bullet." As he picked up the pants, "a fired projectile caught within the jean clothing" dropped to the floor.

Kalenik recovered the projectile. He explained that the "fired projectile is the bullet part of a round that goes through the barrel of the gun."

¶ 7     The State published the footage from Kalenik's body camera for the court without objection from the defendant. The video, which is included in the record on appeal, shows, in relevant part, officers walking into an apartment where numerous people are standing around talking. Other officers are already inside. Several people are standing around someone, later identified as defendant, on the floor. Shortly thereafter, paramedics from the fire department arrive and begin treating defendant. One paramedic states it looks like the wound was accidental. In response, at 8:23 in the video, defendant says, "Yeah, I shot myself." Defendant repeatedly asks for his girlfriend. While defendant is being treated, a person, later identified as Kalenik, tells the paramedics, "It looks like he shot himself." Kalenik subsequently states, "It's here entered with the burn; out here, graze on his knee." The paramedics then leave to transport defendant to the hospital.

¶ 8     Following the publication of the video, Kalenik acknowledged that he was heard on the recording describing defendant's wound. He described the entrance point of the bullet at the top of defendant's hip near his waistline and the exit point "with a burn" near his kneecap, consistent with the hole in his jeans.

¶ 9     On cross-examination, Kalenik testified other officers and civilians were in the apartment before he arrived. Because Kalenik arrived during the party, it was very loud, and people were talking. Defendant was on the floor between the living room and kitchen area, and yelled out in pain while Kalenik questioned him. A woman near defendant attempted to answer some of Kalenik's questions. While the paramedics treated defendant, Kalenik spoke with some of the

party attendees. He acknowledged that defendant's wound was not visible on the video from his body camera, but he could see it when he first walked in and as the paramedics pulled off defendant's pants.

¶ 10    When asked whether he had any medical background, Kalenik testified he had training from the Chicago Police Department and the Illinois National Guard. As a member of the Illinois National Guard, he had "combat life saver skills" and he stated that treating a gunshot wound would be consistent with treating combat wounds. He did not attempt to ascertain the extent of defendant's injury when he arrived at the apartment. Kalenik stated he could hear himself in the body camera video telling someone that it looked like defendant shot himself; however, he acknowledged that he did not know that specifically.

¶ 11    Chicago police officer Fred Caruso testified he responded to the "person shot" dispatch at the apartment. Once inside, he went to a bedroom and recovered a nine-millimeter semiautomatic handgun from a dresser. Caruso released the magazine and "cleared" the gun by "sliding the slide to the rear," which revealed a spent shell casing still in the chamber. Another officer then inventoried the gun. According to Caruso, when semiautomatic firearms are working properly, spent shell casings are discharged from the firearm. A spent casing could remain in the firearm following discharge if the slide was unable to slide to the rear to release it or if the weapon malfunctioned.

¶ 12    On cross-examination, Caruso testified there were a lot of people present at the apartment. When Caruso recovered the gun, defendant was in the living room and not in the bedroom. Caruso had no contact with defendant and did not hear him admit to shooting himself.

¶ 13    In response to the court's questioning, Caruso testified the owner of the weapon, whom he believed was named "Miss Cole," informed him "the gun that shot [defendant]" was in the top drawer of a dresser and led him to the dresser in the bedroom.

¶ 14    Chicago police sergeant Robert Garza testified that, on the night in question, he was first dispatched to the apartment in response to a "person shot" call and learned the person had been transported to a hospital. He later went to the emergency room at the hospital with another officer and spoke with defendant, whom he identified in court. Defendant indicated he did not want to be recorded on video but waived his *Miranda* rights and spoke with Garza about the incident. Defendant stated to Garza that "his girlfriend gave him the gun and he shot himself." It was Garza's understanding that he could not record defendant without defendant's consent.

¶ 15    On cross-examination, Garza testified he wore a body camera that day but did not turn the camera on after defendant declined his consent to be video recorded and defendant did not sign a statement at the hospital. Garza believed defendant initially said to other officers that his girlfriend gave him the gun and he shot himself. Defendant subsequently said she shot him, and then defendant again said he shot himself. Garza clarified that he only spoke with defendant once and the other statements came from other officers, but defendant told him that he shot himself.

¶ 16    The State introduced a certified copy of defendant's prior Class 2 felony aggravated DUI conviction in case number 12 CR 1161601.

¶ 17    Following closing arguments, the court found defendant guilty on all counts. The court stated, in relevant part,

"As [the fire department personnel] were speaking to the defendant, there was a lot of noise, make no mistake, and partygoers speaking within the room, but what can

loudly be heard from the video as well as the testimony -- as corroborated by the testimony of Officer Kalenik is that the defendant said I shot myself. *** What can clearly be heard from the video is the defendant saying he shot himself, that I, quote, I shot myself."

The court found the three officers credible and noted that, even if it disregarded defendant's unrecorded statement at the hospital, it "could not get past the fact that the defendant on the video said I shot myself."

¶ 18    Defendant filed a posttrial motion to reconsider, alleging the evidence was insufficient to prove him guilty beyond a reasonable doubt, and that the State failed to prove the *corpus delicti* of the charged offenses. The court denied the motion, finding,

> "The evidence that was presented at trial, when taken together as a whole, painted a picture that clearly established what happened on this evening at this date, time, and location from the officers' initial stating of where the hole was in the waist area to exiting at the knee to the recovering of the projectile from the same pants leg where the hole was at the knee falling to the floor, the recovery of the weapon, the observing of the spent shell casing not clearing the weapon, was consistent with what the officers testified with."

With respect to the *corpus delicti* of the offenses, the court stated,

> "The evidence proved the offense occurred and the evidence corroborated the facts contained not only in the defendant's confessions and his multiple statements that he shot himself, all of the facts and evidence were taken into consideration together with the defendant's multiple confessions to establish *corpus delicti*."

¶ 19    Following arguments, the court sentenced defendant to four years' imprisonment for UUWF premised on possession of a firearm and two years' imprisonment for reckless discharge of a firearm, to be served concurrently.[1] Defendant timely appealed.

¶ 20    On appeal, defendant argues the evidence was insufficient to prove him guilty beyond a reasonable doubt of UUWF and reckless discharge of a firearm because (1) the State failed to present eyewitness, medical, forensic, and physical evidence to establish he possessed a firearm, and (2) there was no evidence to corroborate his admission that he shot himself, in violation of the *corpus delicti* rule.

¶ 21    We review a challenge to the sufficiency of the evidence by considering whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *People v. Newton*, 2018 IL 122958, ¶ 24. "That standard applies whether the evidence is direct or circumstantial and does not allow this court to substitute its judgment for that of the trier of fact on issues that involve the credibility of the witnesses and the weight of the evidence." *People v. Jones*, 2019 IL App (1st) 170478, ¶ 25. We will not substitute our judgment for that of the trier of fact, nor will we reverse a conviction unless the evidence is so improbable or unsatisfactory so as to raise a reasonable doubt of a defendant's guilt. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 22    To sustain a conviction for UUWF, the State was required to prove defendant knowingly possessed on his person any firearm and that he was previously convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2016). To prove defendant guilty of reckless discharge of a firearm, the State

---

[1] The court merged the two UUWF counts. However, defendant's mittimus reflects both counts, each with a four-year sentence. The mittimus does state that count II (UUWF premised on possession of ammunition) merges into count I (UUWF premised on possession of a firearm).

was required to show defendant discharged a firearm in a reckless manner which endangered the bodily safety of an individual. 720 ILCS 5/24-1.5(a) (West 2016).

¶ 23　Both offenses require proof that defendant possessed a firearm. Possession falls into two categories: actual and constructive. *People v. Walker*, 2020 IL App (1st) 162305, ¶ 20. Actual possession is proved by testimony which shows the defendant exercised some form of dominion over the contraband. *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). Constructive possession is proved by showing the defendant had knowledge of the contraband and exercised immediate and exclusive control over the area where it was found. *Walker*, 2020 IL App (1st) 162305, ¶ 20.

¶ 24　We find the evidence sufficient to prove defendant guilty of UUWF and reckless discharge of a firearm. With respect to his UUWF conviction, it is undisputed that defendant had a prior felony conviction for aggravated DUI. Further, although defendant was not found with the firearm on his person when the officers arrived at the party, his statement that he discharged the weapon was an admission of actual possession. See *People v. Balark*, 2019 IL App (1st) 171626, ¶ 94 (actual possession is the exercise of present personal dominion over contraband).

¶ 25　Moreover, Kalenik, who was trained with respect to combat wounds, observed defendant on the ground bleeding at the waist from an apparent gunshot wound and it "looked like defendant shot himself." Kalenik described the trajectory of the bullet as beginning near defendant's waist and ending "with a burn" near his knee. Kalenik observed a matching hole in defendant's jeans near the knee, noted the hole "seemed to be from a fired bullet," and recovered a fired projectile that dropped from defendant's jeans. Caruso testified that Cole directed him to "the gun that shot" defendant, and he recovered it from the apartment's bedroom. He found a

spent shell casing still in the gun's chamber, which resulted from either the slide being unable to slide to the rear of the gun or it malfunctioning.

¶ 26    It was reasonable for the circuit court to infer from the totality of the evidence, when viewed in the light most favorable to the State, that the gun's slide was unable to release the spent shell casing because the gun was in the waist band of defendant's pants when it was discharged, which then caused a self-inflicted bleeding wound down his leg and the fired projectile to get caught in his jeans. See *People v. Swenson*, 2020 IL 124688, ¶ 35 ("[a]ll reasonable inferences are drawn in favor of a finding of guilt" when assessing the sufficiency of the evidence). The trial court found "[t]he story" that if the gun was in defendant's waist area, the bullet malfunctioned because it might not have been able to come out "consistent with what the Court believed the officers and their credibility on the same of the evidence that was tendered to the court." Given this evidence, the court could readily infer that defendant's gunshot wound was self-inflicted, and therefore, defendant, a felon, was unlawfully in possession of a weapon.

¶ 27    With respect to the reckless discharge conviction, defendant does not argue that the discharge of the weapon in this situation was not reckless; rather, his argument is that the State failed to prove he fired the gun. As with his UUWF conviction, defendant's admission that he shot himself was sufficient to prove that *he* discharged the weapon and therefore was in actual possession of it. Kalenik's testimony and the video evidence established that defendant discharged the weapon while inside an apartment at a party on New Year's Eve with numerous people nearby, causing an injury to himself that required medical treatment and transport to the hospital. This evidence established defendant actually possessed a gun, recklessly discharged it in a room full of people, and endangered the bodily safety of everyone present.

¶ 28    On this record, we cannot say that the evidence was "so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Givens,* 237 Ill. 2d 311, 334 (2010). We are unpersuaded by defendant's contention that the State was required to provide evidence in the form of eyewitness, medical, or forensic testimony. It is well established that "[t]he testimony of a single witness, if it is positive and the witness credible, is sufficient to convict." *People v. Smith*, 185 Ill. 2d 532, 541 (1999).

¶ 29    Here, the court found the officers' testimony credible and corroborated by the body camera footage. See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) (the trier of fact is responsible for weighing the evidence, drawing reasonable inferences therefrom, and resolving any conflicts in the evidence). Although defendant disagrees with the court's assessment, "[a] trier of fact is not required to disregard the inferences that normally flow from the evidence or to seek out all possible explanations consistent with a defendant's innocence and elevate them to reasonable doubt." *People v. Murphy*, 2017 IL App (1st) 142092, ¶ 11.

¶ 30    In reaching this conclusion, we reject defendant's contention that the State failed to prove the *corpus delicti* of UUWF and reckless discharge of a firearm because no independent evidence corroborated his confession that he shot himself. Defendant reiterates that he does not contest firing a gun in this situation was reckless and dangerous. His sole contention is that the State failed to prove that he was the shooter.

¶ 31    In addition to proving the elements of an offense, the State must also prove beyond a reasonable doubt two propositions—that a crime was committed, also known as the *corpus delicti*, and that the defendant committed the crime. *People v. Smith*, 2015 IL App (1st) 132176, ¶ 18. Generally, "the *corpus delicti* cannot be proven by a defendant's admission, confession, or

out-of-court statement alone." *People v. Lara*, 2012 IL 112370, ¶ 17. There must also be some independent corroborating evidence tending to prove that a crime has been committed. *Id.*

¶ 32    The corroborating evidence need only tend to show the commission of an offense. *Id.* ¶ 18. It is not necessary that the independent evidence establish that the defendant committed a crime beyond a reasonable doubt. *Id.* Rather, it is sufficient if the evidence tends to connect the defendant with a crime. *Id.* ¶ 44. "If the corroborating evidence is sufficient, it may be considered, together with the defendant's confession, to determine if the State has sufficiently established the *corpus delicti* to support a conviction. *Id.* ¶ 18.

¶ 33    In this case, the evidence corroborating defendant's admission included the officers' testimony, which the trial court found credible. See *Siguenza-Brito*, 235 Ill. 2d at 228 (it is the within the province of the trier of fact to determine witness credibility). Taken together, the testimony that the slide on the firearm by which defendant was wounded had been unable to release, a bullet traveled from his waist down his leg to his knee, where it broke through the cloth of his jeans and lodged therein, supports the inference that the gunshot wound was self-inflicted and therefore tends to show that defendant shot himself.

¶ 34    Corroborating defendant's admission did not require the State to present physical or forensic evidence linking him to the firearm. See *Lara*, 2012 IL 112370, ¶ 39 (noting that *corpus delicti* rule could be satisfied "*despite the absence of any physical evidence*" (emphasis in original)). Defendant's admission that he shot himself combined with the independent corroborating evidence consisting of the officers' testimony and observations tending to show that he shot himself was sufficient to establish the *corpus delicti* for his convictions of UUWF and reckless discharge of a firearm. See *id.* ¶ 18; see also *People v. Hannah,* 2013 IL App (1st)

111660, ¶ 29 (noting only a "slight level of evidence [is] necessary to establish the *corpus delicti*").

¶ 35    Accordingly, we find the State proved defendant guilty of both offenses beyond a reasonable doubt and the evidence presented was sufficient to corroborate defendant's confession that he shot himself.

¶ 36    We affirm the judgment of the circuit court of Cook County.

¶ 37    Affirmed.