2023 IL App (1st) 211498-U

No. 1-21-1498

Order filed August 31, 2023

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 1320 |
| | ) | |
| KEVIN SMALLWOOD, | ) | Honorable |
| | ) | Vincent Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mikva and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Defendant's conviction reversed where the evidence was insufficient to establish the *corpus delicti* of armed habitual criminal and his possession of a firearm.

¶ 2     Following a bench trial, defendant Kevin Smallwood was found guilty of one count of armed habitual criminal (AHC) and sentenced to nine years in prison. On appeal, defendant argues that the State failed to prove the *corpus delicti* of AHC and his possession of a firearm. We reverse.

¶ 3    Defendant was charged by indictment of one count of AHC and one count of unlawful use or possession of a weapon by a felon (UUWF). The State proceeded to trial on the AHC count, which alleged that defendant knowingly possessed a firearm after having been convicted of two prior felonies (720 ILCS 5/24-1.7(a) (West 2018)). The State nol-prossed the UUWF charge.

¶ 4    Chicago police officer Victor Echavarria testified that on the evening of December 27, 2019, at around 2:15 a.m., he and his partner, Officer Edgar Escobar, responded to a call regarding a person with a firearm on the 5400 block of West Ferdinand Street in Chicago, Illinois. When they arrived at that location, he saw a mother and her children in front of the building as the call stated. The officers began searching the area when Echavarria encountered defendant, who he identified in court, emerging from the gangway. He ordered defendant to the ground. Defendant complied, and Echavarria placed him in handcuffs.

¶ 5    After he handcuffed defendant, Echavarria canvassed the area. He first went through the gangway where he saw defendant emerged and then saw a dumpster, from where he recovered a firearm. Echavarria inventoried the firearm. Defendant was detained about 20 yards away from the dumpster where the firearm was recovered.

¶ 6    On cross-examination, Echavarria testified that he never observed defendant with the firearm in his hands or saw him near the dumpster. The dumpster was a commercial sized dumpster, three feet by five feet, and was located in the back of the multi-unit apartment building. The dumpster was not fenced off and was accessible to the residents of the building and passersby. When defendant emerged from the gangway, Echavarria observed that defendant had a remote control in one hand and a phone in his other hand. On redirect, Echavarria testified that the dumpster was in the gangway he observed defendant emerge from.

¶ 7    Chicago police officer Michael Mendez testified that on December 27, 2019, at approximately 2:15 a.m., he and his partner responded to a call of a person with a firearm at the 5400 block of West Ferdinand. Upon arriving at the scene, he observed a person, who Mendez identified in court as defendant, being taken into custody.

¶ 8    Mendez met with defendant at Loretto Hospital at approximately 4:17 a.m. that same day, where he read defendant his *Miranda* warnings from a preprinted form. Defendant agreed to speak with him, and the conversation was video and audio recorded on Mendez's body-worn camera. The State introduced into evidence and published for the court, without objection, the body-worn camera video footage. After the video was played in open court, Mendez testified that, as seen in his body-worn camera footage, he had shown defendant a digital representation of the firearm recovered from the dumpster that was on his phone.[1]

¶ 9    On cross-examination, Mendez testified that he did not personally observe defendant emerge from the gangway, but defendant was naked when Echavarria detained him. Defendant was taken to the hospital because he was under the influence of PCP, which he had admitted to the other officers. Mendez did not ask defendant about Lori Lightfoot, Donald Trump, or being a "Four Corner Hustler," but defendant was "rambling on about" those things.

¶ 10    The parties stipulated that defendant had two prior felony convictions, one for UUWF (case number 98 CR 2351801), and one for manufacture or delivery of a controlled substance (case number 02 CR 0869401).

---

[1] Mendez's body-worn camera video footage is not included in the record on appeal. Both parties' briefs refer to a transcript that defendant prepared pretrial. This transcript reflects that defendant identified a digital representation of the firearm recovered in the dumpster as his and told Mendez that he had the firearm with him that day for protection. The transcript was created at the behest of the court for use with the audio of the video footage, which was played at trial.

¶ 11    The trial court found defendant guilty of AHC. The court stated that it observed the witnesses and the body-worn camera video footage, and noted that *Miranda* warnings were given to defendant and he stated he understood them. The court also noted that defendant identified the firearm recovered from the dumpster as his firearm from a digital representation of the firearm shown to him. The court stated that defendant had been in the gangway where the dumpster was located, giving him "the opportunity to assert exclusive control over that weapon."

¶ 12    Defendant filed a motion for a new trial, arguing the evidence was insufficient to prove him guilty of AHC and his statement alone was not enough to prove the *corpus delicti* of the offense. The trial court denied defendant's posttrial motion, and sentenced him to nine years in prison.

¶ 13    On appeal, defendant argues that the State failed to prove the *corpus delicti* of AHC, where the evidence was insufficient to corroborate his admission that he owned the recovered firearm, given while he was under the influence of PCP, and his conviction cannot be sustained under a theory of constructive possession of the firearm.

¶ 14    In considering a challenge to the sufficiency of the evidence, this court examines " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "That standard applies whether the evidence is direct or circumstantial and does not allow this court to substitute its judgment for that of the trier of fact on issues that involve the credibility of the witnesses and the weight of the evidence." *People v. Jones*, 2019 IL App (1st) 170478, ¶ 25. A conviction will not be overturned "unless the evidence is so unreasonable,

improbable or unsatisfactory" that there is reasonable doubt as to defendant's guilt. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 15    To prove AHC as charged, the State was required to show that defendant possessed a firearm after having been convicted of two or more specified qualifying felonies. See 720 ILCS 5/24-1.7(a) (West 2018). Defendant only challenges the element of possession, claiming the State failed to prove the *corpus delicti* of AHC and possession could not be established under the theory of constructive possession.

¶ 16    To sustain a conviction, the State must prove two propositions beyond a reasonable doubt: (1) the *corpus delicti*, or commission of the crime; and (2) the identity of the defendant. *People v. Lara*, 2012 IL 112370, ¶ 17. Generally, the *corpus delicti* cannot be proven solely by a defendant's confession, admission, or out-of-court statement. *Id*. When a defendant's confession is part of the *corpus delicti*, the State must also provide some independent corroborating evidence. *Id*.

¶ 17    The independent corroborating evidence need not prove the offense beyond a reasonable doubt, but rather, "need only *tend to show* the commission of the crime." (Emphasis in original.) *Id*. ¶ 18. Corroboration is sufficient to establish the *corpus delicti* "if the evidence, or reasonable inferences based on it," tends to connect the defendant with the crime. *Id*. ¶ 45. If the defendant's confession involves an element of the charged offense, the independent evidence need not verify those circumstances; rather, the evidence must simply correspond with the circumstances recited in the confession and tend to connect the defendant with the crime. *Id*.

¶ 18    Far less independent evidence is required to corroborate a defendant's confession under the *corpus delicti* rule than to prove defendant guilty beyond a reasonable doubt. *Id.* Corroborating only some of the circumstances detailed in a defendant's confession is sufficient. *Id.* The relevant

inquiry is whether the State's independent evidence adequately corroborated the defendant's admission to permit the finder of fact to consider both in determining whether the State met its burden of proof in establishing the *corpus delicti* of the offense. *Id.* ¶ 53. We view the corroborating evidence in the light most favorable to the State. *People v. Pitts*, 2016 IL App (1st) 132205, ¶ 31.

¶ 19     Possession of contraband may be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). "[B]oth actual and constructive possession requires proof beyond a reasonable doubt that the defendant knowingly possessed the prohibited item." *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 23. Actual possession is the exercise of present personal dominion over illicit material and exists where the defendant exercises immediate and exclusive dominion or control over the illicit material. *People v. Balark*, 2019 IL App (1st) 171626, ¶ 94. However, it does not require "present personal touching" of the material. (Internal quotation marks omitted.) *Id.* Actual possession of a weapon may be proven by evidence that the defendant tried to conceal or throw the weapon away. *Id.*

¶ 20     Constructive possession exists where the defendant is not found in actual possession of contraband but has the intent and capability to maintain control and dominion over it. *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27. To establish constructive possession of a firearm, the State must prove both that the defendant (1) knew the firearm was present and (2) exercised immediate and exclusive control over the area in which the firearm was found. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 22. Constructive possession may be proved through circumstantial evidence. *People v. Wright*, 2013 IL App (1st) 111803, ¶ 25. "Circumstantial evidence is generally sufficient to support a conviction if it is inconsistent with any reasonable

hypothesis of innocence, but the trier of fact need not search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Cline*, 2022 IL 126383, ¶ 34.

¶ 21    Here, defendant concedes the body-worn camera video shows that he admitted the firearm recovered from the dumpster was his, *i.e.*, he had possessed the firearm. See *Balark*, 2019 IL App (1st) 171626, ¶ 94 (actual possession is the exercise of present personal dominion over contraband); *People v. Jones*, 2019 IL App (1st) 170478, ¶ 28 (sufficient evidence of possession where defendant admitted to possessing the firearm). However, he argues the State did not prove the *corpus delicti* of the offense because the admission was unreliable where he was under the influence of PCP at the time and there was no independent corroborating evidence to show his possession of the firearm.

¶ 22    As an initial matter, defendant did not include the body-camera video exhibit containing his admission in the record on appeal.[2] The trial court relied on the video to determine that defendant's admission was reliable. Although the trial court had the benefit of seeing and hearing the body-camera footage, we cannot review what defendant said in the video or the circumstances under which he made the statement. Defendant, as appellant, bears the burden of presenting a sufficiently complete record so that this court may determine whether there was the error he claims. *People v. Carter*, 2015 IL 117709, ¶ 19. Any doubts stemming from an incomplete record will be construed against him, and if the record is insufficient for our review of an issue, we must presume

---

[2] Both parties reference a transcript of the video's audio that defendant prepared prior to trial at the court's behest. Although not in evidence, the transcript reflects that defendant identified the firearm recovered by Echavarria as his.

that the trial court's order was inconformity with the law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984); *People v. Anaya*, 2020 IL App (1st) 170839, ¶ 23. Nonetheless, we find the evidence elicited through the testimony offered at trial provides a basis to reject that presumption.

¶ 23 We do not find the evidence sufficient to convict defendant because the *corpus delicti* of AHC cannot be established. At trial, the State argued that "defendant's own confession *** corroborates the fact that he was in possession of that gun." However, defendant gave his statements confessing to possessing the firearm while hospitalized, having been transported to Loretto Hospital from the scene because he had admitted to officers that he had taken PCP. He had been found outside naked in late December, holding a phone in one hand and a remote control in the other. While in the hospital and responding to Mendez's questions, defendant rambled on seemingly incoherently about a series of random topics including Lori Lightfoot, Donald Trump, and being a Four Corner Hustler, all of which were entirely unrelated to the questions posed.

¶ 24 It was amidst these unresponsive ramblings that defendant was shown, not the actual, but a digital representation of the recovered firearm and admitted to owning the firearm. Based on these facts and circumstances, defendant's statements to Mendez raise a question of reliability and must be independently corroborated for purposes of the *corpus delicti* rule. See *Lara*, 2012 IL 112370, ¶ 47 (stating the "primary purpose of the *corpus delicti* rule is to ensure the confession is not rendered unreliable due to either improper coercion of the defendant or the presence of some psychological factor").

¶ 25 We find, taken as a whole and viewed in the light most favorable to the State, there was insufficient independent corroborating evidence tending to show defendant's possession of the

firearm. See *Pitts*, 2016 IL App (1st) 132205, ¶ 31 (we view the corroborating evidence in the light most favorable to the State). Defendant was not found in actual possession of the firearm to corroborate his statement, and so the State was required to show independent corroborating evidence of his constructive possession of the firearm. Here, the only connection to the firearm consisted of Officer Echavarria's observation of defendant emerging from the nearby gangway and detaining him about 20 yards from the dumpster where the firearm was recovered. But that alone was insufficient to tend to show he had knowledge or immediate and exclusive control over the firearm under a theory of constructive possession of the firearm.

¶ 26    In this case, there was no evidence establishing that anyone ever observed him possessing a firearm, discarding one in the commercial dumpster, which was accessible to passersby and located near a multi-family apartment building, or standing directly next to the dumpster. His mere presence in the gangway was insufficient independent evidence linking him to the firearm and tending to show his constructive possession of the firearm. See *People v. Walker*, 2020 IL App (1st) 162305, ¶¶ 25-28 (finding that the State did not prove the *corpus delicti* of unlawful use of a weapon by a felon where the defendant made a statement admitting to owning the recovered ammunition but the only connection to the ammunition was that he was sleeping in the apartment where it was recovered).

¶ 27    Even viewing the evidence in the light most favorable to the State, the evidence offered did not establish the *corpus delicti* of AHC where defendant's incoherent statements raised reliability concerns and the evidence failed to independently corroborate defendant's statement claiming possession of a firearm. Therefore, the evidence in this case was insufficient to find

defendant's possession of a firearm and his guilt of AHC beyond a reasonable doubt. Accordingly, we reverse defendant's conviction for AHC.

¶ 28    For the foregoing reasons, we reverse the judgment of the trial court.

¶ 29    Reversed.